IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERICA LAUREN MILATZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-1219-STE |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 18-34). The Appeals Council denied Plaintiff's

request for review. (TR. 2-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 28, 2016, the application date. (TR. 20). At step two, the ALJ determined Ms. Milatz suffered from the following severe impairments: obesity; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; depression disorder; and anxiety disorder. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Ms. Milatz retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except she is able to lift or carry, push or pull twenty pounds occasionally and 10 pounds frequently. The claimant can sit for six out of an eight-hour workday, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, ladders, ropes, or scaffolds. The claimant can occasionally stoop. The claimant can understand, remember, and carry out simple and some complex tasks. The claimant can tolerate superficial contact with coworkers, supervisors, and members of the public.

(TR. 23).

At step four, the ALJ noted that Plaintiff did not have any past relevant work. (TR. 33). However, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 59-60). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 60). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Milatz was not disabled based on her ability to perform the identified jobs. (TR. 33-34).

### III.   ISSUES PRESENTED

On appeal, Ms. Milatz raises multiple claims delineated under the guise of two propositions: (1) the RFC is unsupported by the substantial evidence of the record as a whole and (2) the ALJ failed to properly evaluate the consistency of Plaintiff's complaints with the evidence of record. (ECF Nos. 17:2-15; 22:1-4).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.     PLAINTIFF'S FIRST PROPOSITION

Ms. Milatz identifies her first proposition thus: "The ALJ's RFC as to Claimant's physical impairment is unsupported by the substantial evidence of the record as a whole." (ECF No. 17). Plaintiff then presents a disjointed series of arguments, not all of which are clearly connected to the proposition as stated. Based on the scattershot nature of Plaintiff's brief, intermingling factual statements seemingly unsupported by evidence, co-mingled with legal premises, not all of which are applicable to Plaintiff's case, the Court will do its best to analyze the issues on appeal.

After alleging a lack of substantial evidence to support the RFC, Ms. Milatz: (1) identifies her Crohn's disease as "nonsevere," characterized by chronic fatigue and abdominal pain; (2) recites Listing 5.00E which explains how the Commissioner evaluates Inflammatory Bowel Disease (IBD) under Listing 5.06; and (3) refers to her testimony at the hearing in relation to struggling with fatigue.

Plaintiff then proceeds to cite the law regarding the Commissioner's duty to consider specific factors in weighing medical opinions,[1] discussing specifically the Social Security Administration's "rule change" with regards to the same. (ECF No. 17:3-4). Indeed, for claims filed *after* March 27, 2017, 20 C.F.R. § 404.1520c provides that the Commissioner no longer will "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only articulate how persuasive he or she finds the medical opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2). In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5).

---

[1] Citing 20 C.F.R. §§ 404.1520c & 416.920c, Ms. Milatz actually states that "[t]he Commissioner is required to consider specific factors in weighing medical *evidence*." (ECF No. 17:3). But sections 404.1520c & 416.920c concern the ALJ's duty evaluate medical *opinions*, not evidence. The Social Security Administration differentiates between objective medial evidence and medical opinions. *See* 20 C.F.R. § 404.1513(a)(1), (2). Objective medical evidence consists of medical signs, laboratory findings, or both, as defined in 20 C.F.R. § 404.1502(f). *See* 20 C.F.R. § 404.1513(a)(1). And medical opinions are statements from a medical source about what the claimant can do despite impairments and whether the claimant has certain work-related abilities and/or limitations. *See* 20 C.F.R. § 404.1513(a)(2).

Following Plaintiff's recitation of the law regarding an ALJ's duty to evaluate medical opinions, Plaintiff spends three pages citing evidence in the record documenting:

- A nurse practitioner's notation of Plaintiff's past surgical history regarding an October 5, 2015 surgical removal of one foot of Plaintiff's small bowel;

- A December 8, 2014 complaint of fatigue;

- A January 19, 2015 assessment by Dr. Larry Bookman, that Plaintiff suffered from Crohn's disease, abdominal pain, diarrhea, fatigue/lethargy/malaise;

- A June 8, 2015 report from Plaintiff that she was having 5-6 bowel movements per day;

- A September 14, 2015 report by Plaintiff that she suffered from pain in her periumbilical and lower abdomen to mid abdomen that was sharp, severe, frequent, intermittent, and variable in timing;

- 
- A report from Dr. Larry Bookman that Plaintiff suffered from "heart fluttering;" nausea without vomiting; 1-2 bowel movements per day described as "mushy;" an "ESR;"[2] increased symptoms requiring an addition of prednisone; an increased ESR of 33 on August 21, 2015; and a small bowel follow through on August 27 that showed a "25 cm long stricture to terminal ileum with ulceration;"

- A March 15, 2016 report that Plaintiff changed from the Humira auto injector pen to the pre-filled syringe;[3] and a report of 4-12 watery loose stools daily with occasional anal leakage with urinary voiding;

---

[2] Plaintiff does not define an "ESR," but the Court's independent research indicates that the acronym stands for erythrocyte sedimentation rate, which is a type of blood test that measures how quickly erythrocytes (red blood cells) settle at the bottom of a test tube that contains a blood sample. An ESR can help determine if an individual has a condition that causes inflammation. See https://medline plus.gov/lab-tests/erythrocyte-sedimentation-rate-esr/ (last visited Feb. 12, 2022).

[3] Plaintiff does not identify the purpose of the medication or what symptoms it was intended to treat.

- A January 9, 2017 report from internist Dr. Sidney Williams who documented Plaintiff's complaints and diagnosed her with Crohn's Disease, fecal incontinence, frequent bowel movements, and debility;

- A February 28, 2017 assessment of "chronic bilateral low back pain with left-sided sciatica; Bipolar I Disorder, controlled; and Crohn's disease;"

- An August 4, 2017 report of 8-10 loose bowel movements per day, of moderate severity, with associated constipation, nausea and/or vomiting, and trouble swallowing;

- A notation from Dr. Bookman that Plaintiff had been in an "active flare" of Crohn's Disease in July 2017;

- An October 19, 2017 report of rectal pain and discharge, along with perianal swelling and pain with drainage of fecal material, which prompted a course of Flagyl and Cipro;

- A January 8, 2018 report of alternating constipation and diarrhea and rectal pain, present for weeks, worsening over time, and of moderate severity;

- A June 13, 2018 report of extreme fatigue and "generalized ill" feeling related to her Crohn's Disease;

- A June 28, 2018 report of 6-7 bowel movement per day with nausea and intermittent abdominal cramping; and

- A September 2018 complaint of moderate to severe intermittent abdominal pain.

(ECF No. 17:6-8). Following this recitation, Ms. Milatz simply states: "The ALJ failed to properly consider the favorable medical and other evidence that indicates Claimant is unable to perform at any job for eight hours a day, five days a week." (ECF No. 17:8).

7

At this point, Plaintiff has alluded to the fact that she meets a Listing, has cited law in relation to the evaluation of medical opinions, and has recounted a plethora of evidence related to her Crohn's Disease. Again, based on the haphazard nature of Plaintiff's brief, it is difficult to ascertain precisely, what Ms. Milatz is intending to argue. However, at this juncture, the Court makes three observations.

First, Plaintiff has identified a Listing in passing—Listing 5.06 for IBD—but has neither recited the specific criteria for that Listing, nor argued that she has satisfied the same. *See* ECF No. 17. In her reply brief, Plaintiff unequivocally states that her: "combination of impairments, particularly when including the unpredictable symptoms that accompany Crohn's Disease, meets and/or equals Medical Listing 5.00E." (ECF No. 22:2). Three problems exist with Plaintiff's "Listing" argument.

First, Plaintiff cannot raise a new issue in a reply brief. *See Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2009) (issues raised for the first time in a reply brief are generally deemed waived). Ms. Milatz did not affirmatively raise nor develop the argument in her opening brief and, thus, the Court deems the issue waived.

The second problem with Plaintiff's "Listing" argument is that it is undeveloped. As stated, Plaintiff neither cites the criteria for the relevant Listing, nor cites any evidence showing that she has satisfied said Listing. *See supra.* Ms. Milatz references the Listing for IBD and spends three pages citing evidence peripherally related to her Crohn's Disease, but she does not link the evidence to any of the Listing criteria in any cogent way to persuade the Court that she indeed, satisfies the Listing, apart from her affirmative

8

statement in the reply brief. Plaintiff's counsel has been repeatedly instructed that the undersigned will not search the record for Plaintiff nor address underdeveloped arguments, and the undersigned once again instructs her regarding the same. *See* ECF No. 28, *Roybal v. Kijakazi*, No. CIV-20-1013-STE, (W.D. Okla. Oct. 22, 2021); ECF No. 27, *Brown v. Kijakazi*, No. CIV-20-692-STE (W.D. Okla. Sept. 10, 2021); *see also Murrell v. Shalala,* 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review); *Kirkpatrick v. Colvin*, 663 F. App'x at 649 (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

Finally, although Plaintiff states that she "meets and/or equals Medical Listing 5.00E," Plaintiff relies on a non-existent listing. Section 5.00 is a general introduction to the Listings for the Digestive System, with the actual listed impairments beginning at Listing 5.02. The introductory section cited by Ms. Milatz is merely a description of how IBD is evaluated. Thus, Plaintiff's argument that she "meets and/or equals Medical Listing 5.00E" is incongruous, at best.

Next, the Court notes that Plaintiff has accurately cited the law with respect to the ALJ's duty to evaluate medical opinions, for cases filed after March 27, 2017. *See supra*. But the problem with Plaintiff's reference to the "new rules" is that they do not apply to Ms. Milatz' case, in light of the fact that she filed her application for supplemental security income on October 28, 2016, prior to the rule change. *See* TR. 18.

Finally, Ms. Milatz argues that the ALJ failed to properly consider evidence which indicates that she "is unable to perform at any job for eight hours a day, five days a week," but this premise seems to be based on Plaintiff's own belief, as she has failed to: (1) link any of the evidence to any sort of law or regulations supporting the same or (2) cite an opinion from any medical professional regarding specific limitations attributable to Ms. Milatz which would prevent her from working. As stated, the Court cannot supplant Plaintiff's brief or otherwise search the record to support her argument. *See supra*.

Next, and still under the rubric alleging a lack of substantial evidence to support the RFC, Ms. Milatz states: "[a]t Step 2, the ALJ impermissibly minimized Claimant's clearly diagnosed Crohn's disease." (ECF No. 17:8). To the extent Ms. Milatz is arguing error at step two by not finding the Crohn's disease "severe," the Court rejects any such argument for two reasons. First, Plaintiff herself characterizes her Crohn's disease as "non-severe." (ECF No. 17:3). Second, at step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.' " *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 156, (1987) (O'Connor, J., concurring)). In circumstances where an ALJ deems at least one impairment severe, and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at

step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Here, at step two, the ALJ determined that Ms. Milatz suffered from "severe" obesity; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; depression disorder; and anxiety disorder. (TR. 20). Following that determination, the ALJ assessed the remaining steps in the disability analysis. *See* TR. 20-34. Thus, any error in failing to consider the Crohn's Disease as severe at step two is considered harmless.

Next, Plaintiff criticizes the ALJ's assessment of an examination and findings by Dr. Sidney Williams. (ECF No. 17:8-9). Dr. Williams examined Plaintiff on January 9, 2017 and ultimately diagnosed her with:

- Crohn's Disease;
- Fecal incontinence with sneezing or coughing;
- Frequent bowel movements;
- Back and neck pain due to spondylosis;
- Depression disorder;
- Anxiety disorder; and
- Impaired mobility and activities of daily living due to pain and unpredictable bowel movements.

(TR. 518). Dr. Williams also stated: "Debility present but whether it qualifies as a listing is beyond scope of an Internist examination." (TR. 518).

Ms. Milatz argues that the ALJ erred in his evaluation of Dr. Williams' examination findings, stating: "She did not note Dr. Williams further assessment of fecal incontinence when sneezing or coughing, frequent bowel movements (ten times or more/day), and that she assessed impaired mobility and activities of daily living due to pain and unpredictable bowel movements." (ECF No. 17:8). Plaintiff also takes issue with the fact that the ALJ omitted any reference to the fact that Dr. Williams assessed "debility present," but could not opine whether Plaintiff qualified for a Listing. (ECF No. 17:8-9). Finally, Plaintiff states: "The ALJ, in his evaluation of the opinion evidence, wholly failed to discuss Dr. Williams' consultative examination report and whether her opinions and findings were persuasive, consistent, supported, etc. He failed to explain how his RFC accounted for Dr. Williams' report. Instead, he engaged in impermissible picking and choosing of evidence to support an unfavorable decision." (ECF No. 17:9) (internal citations omitted). The Court rejects Plaintiff's challenges.

First, contrary to Plaintiff's assertion, in the administrative decision, the ALJ stated:

> In January 2017, the claimant underwent a consultative examination by Sidney D. Williams, M.D. She reported occasional loss of fecal when she coughs/sneezes, 10 or more watery bowel movements per day, chronic pain in her neck and low back, and abdomen pain. Dr. Williams examined the claimant noting mild tenderness to palpation of the abdomen, tenderness and restricted motion of the spine, a speed of gait that is 80% expected, and depressive affect.

(TR. 26).

In evaluating a claimant's disability, the "record must demonstrate the ALJ considered all of the evidence," but there is no requirement that an ALJ discuss "every

12

piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted); *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). While it is true that the ALJ failed to specifically mention Dr. Williams' assessment of Plaintiff's impaired mobility and activities of daily living due to pain and unpredictable bowel movements, the ALJ stated he had considered all of the medical evidence in the record. (TR. 18). Under such circumstances, the Court "take[s] the ALJ at his word, unless shown otherwise." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

Likewise, the Court finds no error in the ALJ's omission of Dr. Williams' assessment of "debility present," and statement that he could not opine whether Plaintiff qualified for a Listing. "Debility" is simply defined as "physical weakness," the mere presence of which is insufficient to establish a disability. And Dr. Williams' statement that he could not opine whether Plaintiff qualified for a Listing is merely just that—the doctor did not opine one way or the other regarding the presence of a Listing and did not indicate that further testing would be necessary in relation thereto. Accordingly, the Court finds no error in the ALJs failure to specifically discuss this portion of Dr. Williams' report.

Plaintiff next argues that the ALJ erred in failing to consider the effects of the Crohn's Disease at step four, after deeming it to be a non-severe impairment at step two, in violation of *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). (ECF No. 17:10). The Court disagrees.

In *Wells*, the Tenth Circuit Court of Appeals specifically stated: "in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

medically determinable impairments, *whether severe or not severe"* and "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." (emphasis in original). Here, Plaintiff alleges a violation of *Wells*, arguing that in formulating the RFC, the ALJ failed to consider Plaintiff's Crohn's Disease. (ECF No. 17:10). The Court disagrees. Instead of relying solely on his step two findings, the ALJ specifically discussed the Crohn's Disease at step four, stating that the RFC was supported, in part, by the fact that "[Plaintiff's] crohn's disease [was] noted to be without complication and stable." (TR. 33). Thus, the Court finds no error with respect to Plaintiff's allegation that the ALJ committed legal error in violation of *Wells*.

## VI. PLAINTIFF'S SECOND PROPOSITION

Under the rubric of alleging that the RFC lacked substantial evidence (Plaintiff's first proposition), and in her second proposition of error, Ms. Milatz presents two arguments challenging the ALJ's evaluation of Plaintiff's pain stemming from her Crohn's Disease and degenerative disc disease: (1) that the ALJ failed to perform the correct legal analysis and (2) that the analysis was wrong, because the RFC failed to properly account for Plaintiff's pain. (ECF No. 17:8. 10-11). The Court agrees with Plaintiff's first point of error and on that basis finds that remand is warranted. As a result, the Court need not address Plaintiff's second point of error, as the RFC may be affected based on the remand for a re-evaluation of Plaintiff's subjective allegations. *See Watkins v. Barnhart*, 350 F.3d

1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## A.     ALJ's Duty to Evaluate Plaintiff's Subjective Symptoms

Social Security Ruling (SSR) 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms, including pain, and determine the extent to which the symptoms limit the claimant's ability to work. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. SSR *Id.*, at *9.

### B.    Error in the ALJ's Consideration of Plaintiff's Pain

In evaluating Plaintiff's pain, the ALJ recognized the proper legal standard as set forth in SSR 16-3p, and thoroughly summarized: (1) Ms. Milatz' testimony at the administrative hearing and her statements related to symptoms and other pain as set forth in several Disability Reports and Function Reports; (2) objective medical evidence; (3) medical opinions; and (4) a third-party function report submitted by Plaintiff's mother. *See* (TR. 23-32).

For example, the ALJ acknowledged:

- A January 2017 report of "worsening" Crohn's Disease, accompanied by daily nausea and fatigue, an inability to be far away from a bathroom, and an inability to stand for long periods of time due to her back pain;

- A March 2017 report of arthritis in her hands, ankles, beck, and hips, medications for her Crohn's which caused side effects of fatigue and drowsiness;

- A report of Plaintiff's inability to keep up with her children, having difficulty with housework, the need to curl up with a heating pad to relieve gut pain, and Crohn's flares causing her inflammation in the bulging disc in her back;

16

- Reports of 6-15 bowel movements daily causing dehydration, nausea and a loss of her top teeth to the inability to absorb nutrients, and her Crohn's medication causing a lowered immune system;

- A December 2016 report noting the Crohn's was causing fatigue, upset stomach, nausea, and frequent restroom visits which affected her ability to perform daily activities, lift, squat, bend, walk (about ½ mile before resting 10-15 minutes);

- A May 2017 report from Plaintiff alleging the Crohn's was causing chronic fatigue, upset stomach, nausea, up to 15 bowel movements a day, abdominal pain, cramping, joint pain and inflammation;

- Plaintiff's testimony that her Crohn's caused her fatigue, the need for frequent restroom breaks, exhaustion after showering, emergency restroom breaks requiring her to leave work, twelve bowel movements on an average day, with bad days averaging 15-18 bowel movements, each restroom break lasting between 5-25 minutes, accompanied by pain, shaking, and fear and followed by nausea and pain requiring her to lie down for 20-30 minutes;

- Objective evidence documenting edema and ulceration consistent with her Crohn's Disease;

- A June 2016 report documenting 5 soft stools daily, with increased mucous in the stools and intermittent discomfort;

- A May 2016 report of 4-12 watery, loose stools daily;

- A July 2016 MRI of the lumbar spine documenting disc degeneration at L5-S1, with paracentral disc protrusion;

- An October 2016 report of increased pain with thoracic/cervical range of motion;

- A January 2017 report from Dr. Williams noting mild tenderness to palpation to the abdomen, tenderness and restriction of motion of the spine;

- A July 2017 pathology report which noted mild active colitis with ulcer;

- An August 2017 report of 8-10 loose bowel movements daily, present for months with moderate severity;

- An October 2017 report of rectal pain and discharge; followed by November 2017 surgery for rectal fistula with Crohn's Disease of the small intestine with intestinal obstruction;

- A January 2018 report of alternating constipation and diarrhea;

- An April 2018 report of intermittent chronic low back pain and increased diarrhea and abdominal pain from her Crohn's Disease;

- A May 2018 colonoscopy report documenting focal ulceration with associated granulation tissue, associated superficial cryptitis, and possible inflammation and ulceration or residual Crohn's;

- A June 2018 report of 6-7 bowel movements per day with nausea and abdominal cramping; and

- A September 2018 report of a Crohn's flare which required Ms. Milatz to go to the emergency room due to rectal bleeding and severe intermittent abdominal pain.

(TR. 24-30).

As stated, in considering Plaintiff's subjective allegations, the ALJ was required to:

1. make a threshold determination regarding whether there existed an underlying impairment that could reasonably be expected to produce a claimant's pain;

2. evaluate the intensity and persistence of the claimant's pain to determine the extent to which it limited an individual's ability to perform work-related activities, examining the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record; and

3. provide specific reasons for the weight given to the [claimant's] symptoms, which are supported by the evidence, and clearly articulated for purposes of any subsequent review.

*See supra*, SSR 16-3p. Here, the decision reflects that the ALJ completed the first two steps in evaluating Plaintiff's pain and subjective allegations. And the ALJ provided well-

reasoned explanations supported by evidence regarding Plaintiff's mental limitations and her ability to lift, carry, push, pull, climb ramps and stairs, ladders, ropes, or scaffolds, and stoop. (TR. 30-32). But noticeably absent is: (1) a discussion of Plaintiff's Crohn's Disease and related limitations and (2) an explanation, supported by the evidence, regarding the ALJ's obvious disbelief regarding the same.

At the administrative hearing, a VE testified that a hypothetical individual's need to be away from the workstation approximately ten minutes for every hour worked would eliminate all available employment. (TR. 60-61). And as stated, Ms. Milatz testified that she had suffered from twelve daily average bowel movements lasting anywhere from 5-25 minutes. *See* TR. 52-53. But the only "explanation" regarding the ALJ's dismissal of Plaintiff's testimony and other evidence documenting the Crohn's Disease is a reference to a Physician's Report from Stillwater Medical Center where Plaintiff was being seen for depression and anxiety. *See* TR. 33. In the report, the physician noted that Ms. Milatz suffered from "Crohn's disease without complication, unspecific gastrointestinal tract location" which was stable. (TR. 705). And by means of an explanation discounting the voluminous evidence and testimony regarding Plaintiff's Crohn's Disease, the ALJ states: "[Plaintiff's] crohn's disease was noted to be without complication and stable." (TR. 33). Three problems exist with this explanation.

First, the notation was based on one visit in November 2018 by a physician who was treating Plaintiff for anxiety and depression, not Crohn's Disease. Second, although the Crohn's Disease was noted as "stable," the November 2018 report also noted that

Plaintiff was positive for diarrhea. (TR. 704). Third, at the hearing on January 17, 2019, Ms. Milatz herself stated that she was actively having approximately twelve bowel movements daily which lasted from 5-25 minutes and often resulted in nausea and pain, requiring her to lie down for 20-30 minutes. (TR. 52-54). Based on the volume of evidence and testimony regarding the effects of Plaintiff's Crohn's Disease, the ALJ's explanation for dismissing the same was insufficient and in violation of SSR 16-3p. As a result, remand is warranted.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on March 7, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE